**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALEXA THOMAS,**<br>*Plaintiff,*<br><br>**v.**<br><br>**SHEET METAL WORKERS LOCAL UNION 19 et al.,**<br>*Defendants.* | **Civil No. 24-1399** |

**MEMORANDUM**

**Costello, J.** **November 13, 2026**

Plaintiff Alexa Thomas is a former apprentice with Defendant Sheet Metal Workers' Joint Apprenticeship and Training Fund of Central Pennsylvania ("JATC") and former member of Defendant Sheet Metal Workers Local Union 19 ("Local 19"). Following her termination from JATC's apprenticeship program, Plaintiff sued Defendants for gender and disability discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). Defendants have moved for summary judgment on all claims. For the reasons that follow, the Court will grant Local 19's motion and will grant JATC's motion in part and deny it in part.

## I. BACKGROUND

### A. The Parties

From May 8, 2020, until September 7, 2022, Plaintiff claims that Defendants employed her as an apprentice sheet metal worker. Memorandum Denying Defendants' Motion to Dismiss at 1 (ECF No. 25). On May 3 or 4, 2020, Plaintiff spoke with JATC's Training Director Pat Edmonds about joining the apprenticeship program. Local 19's Statement of Undisputed

Material Facts ¶¶ 7-8 (ECF No. 49-3). On May 8, Plaintiff officially joined the program and, with the help of Edmonds, bypassed the required entry test. *Id.* ¶¶ 8-10. Plaintiff was one of the only women in her apprenticeship class. Plaintiff's Counter-Statement of Undisputed Material Facts ¶ 6 (ECF No. 51-2).

Defendant Local 19 is a labor organization representing members of the sheet metal trade. ECF No. 49-3 ¶ 2. During the relevant time, William Dorward was its business agent. JATC's Statement of Undisputed Material Facts ¶ 10 (ECF No. 48-3). In that role, Dorward represented members of Local 19, negotiated contracts, ensured that contractors treated union workers properly, and assured that union members received work. *Id.* ¶ 11.

Defendant JATC is a labor-management committee composed of four labor-side and four contractor-side trustees. ECF No. 49-3 ¶ 3. During the relevant time, the committee's labor-side trustees were William Dorward, Michael Ford, Gary Masino, and Bryan Bush. Collective Bargaining Agreement art. XIII § 7(j) (ECF No. 49-14). The committee's contractor-side trustees were Lori Eshenaur, Nate Kaetzel, Brad Vinglish, and William Sponaugle. *Id.*

JATC operated an apprenticeship program for aspiring sheet metal workers. ECF No. 49-3 ¶ 3. It drafted rules and regulations that govern the eligibility, registration, education, transfer, wages, hours, and working conditions of its apprentices. ECF No. 49-14 art. XIII § 1. Apprentices rotated among the contractor signatories of the Collective Bargaining Agreement ("third-party contractors") at the sole discretion of JATC. *Id.* art. XIII § 6. JATC was responsible for the discipline, reassignment, and discharge of its apprentices. *Id.* art. XIII § 10. When an apprentice was working on-site for a contractor, the apprentices and contractors were bound by JATC's apprenticeship standards. ECF No. 51-2 ¶¶ 20-21.

**B. Plaintiff's Apprenticeship & Dismissal**

Plaintiff started her apprenticeship in May 2020. As part of the program, she was assigned to work on-site with third-party contractors: GR Sponaugle & Sons, Inc.; H.T. Lyons, Inc.; and Warko Roofing Co. Plaintiff's Deposition at 68:24-69:17 (ECF No. 49-4). Plaintiff was paid for her work and time spent in JATC's classroom by the contractor she was assigned to at the time. *Id.*; Plaintiff's Form W-2s (ECF No. 49-8). Throughout her experience, Plaintiff faced sexual harassment from employees of the contractors. For example, Plaintiff received several texts from Dylan Malarchick, an H.T. Lyons employee, stating that "he knows that [she] want[ed] him, he knows that [she] want[ed] to date him or have sex with him . . . that everybody knew it, and [she] should just do it." ECF No. 49-4 at 60:11-17. Plaintiff reported to Edmonds that Malarchick "was spreading rumors to other apprentices and journeymen, that [she] was interested in him romantically." *Id.* at 61:14-16, 62:6-12. In addition, Plaintiff was physically assaulted by Mike Hudak, another H.T. Lyons employee. She explained that Hudak Plaintiff "sexually assaulted [her] by pressing his pelvic area into her buttocks and wrapped his arms around her." Plaintiff's Responses to Interrogatories ¶ 4(5) (ECF No. 50-15). Hudak made demeaning comments to her, as well. He stated that women were too weak for the job and that Plaintiff should become a nurse instead. *Id.* Plaintiff did not report Hudak's abuse to Edmonds or anyone else at JATC.

To facilitate her training, Plaintiff received written evaluations of her performance by employees of the third-party contractors. *See* Evaluation of Plaintiff (ECF No. 50-5); Davies' Evaluation (ECF No. 50-6); Rodriguez's Evaluation (ECF No. 50-11); Yandfrisevitz's Evaluation (ECF No. 50-12); Compilation of Plaintiff's Evaluations (ECF No. 49-15); *see also* Plaintiff's Attendance Record (ECF No. 49-19). These evaluations, covering Plaintiff's work throughout

her apprenticeship, note issues with absenteeism, tardiness, performance, and frequent use of her cell phone while on the job. *See, e.g.*, ECF No. 49-15. Specifically, the evaluations state that Plaintiff "regularly call[ed] off or le[ft] early" and was "[a]lways on her phone or wasting time talking about non-work related issues." ECF No. 50-11. They also note that "[i]t would appear sometimes the physical part of the trade might be too much for" her. ECF No. 50-12.

Plaintiff claims that her physical limitations stem from an injury she suffered during her apprenticeship. ECF No. 50 at 8. In the summer of 2020, while Plaintiff was performing ductwork, she tore two muscles in her right shoulder. ECF No. 49-4 at 79:24-81:7. The injury required her to undergo significant physical therapy. *Id.* at 79:24-25.

On September 7, 2022, the JATC Board held a special meeting to discuss the future of Plaintiff's apprenticeship. *See* Special Meeting Minutes (ECF No. 49-16). Trustees Lori Eshenaur, Nate Kaetzel, Michael Ford, and William Dorward discussed Plaintiff's reliability issues and cell phone use. *Id.*; Dorward's Deposition at 88:22-25 (ECF No. 49-6). The Board provided Plaintiff with an opportunity to defend herself. *See id.* During that time, Eshenaur purportedly told Plaintiff that "if you have mental problems, if you have a heart problem do we even really want you to be in our union?" and that Plaintiff "seem[s] more like a liability than an asset." ECF No. 49-4 at 265:5-10. Eshenaur also purportedly dismissed Plaintiff's claims of sexual assault and harassment because "she personally had never experienced anything like that" during her career. ECF No. 50-15 ¶ 4(2). At the end of the meeting, the trustees decided to dismiss Plaintiff from the apprenticeship program. ECF No. 46-16.

Plaintiff appealed their decision. *See generally* Plaintiff's Appeal Letter (ECF No. 49-17). She stated that she would change the timing of her physical therapy appointments to address her tardiness and absenteeism issues. *Id.* She also noted that she would leave her cell

phone in her car to avoid distractions during the workday. *Id.* Despite her letter, JATC did not change its decision.

### C. The Present Action

On April 3, 2024, Plaintiff filed the present action. *See generally* Complaint (ECF No. 1). She brought claims against both Defendants for gender discrimination, sexual harassment, and retaliation under Title VII. *Id.* at 8-9. She also brought claims for disability discrimination, failure to accommodate, and retaliation under the ADA. *Id.* at 9-10. On June 3, 2024, JATC filed a motion to dismiss Plaintiff's Title VII and ADA claims. *See generally* JATC's Motion to Dismiss (ECF No. 12). On June 11, 2024, Local 19 followed suit. *See generally* Local 19's Motion to Dismiss (ECF No. 14). The Court denied both motions. *See generally* Motion to Dismiss Order (ECF No. 26).[1]

On May 27, 2026, both Defendants filed separate motions for summary judgment. *See generally* JATC's Motion for Summary Judgment (ECF No. 48); Local 19's Motion for Summary Judgment (ECF No. 49). Plaintiff opposed both motions. *See generally* Plaintiff's Opposition to JATC's Motion (ECF No. 50); Plaintiff's Opposition to Local 19's Motion (ECF No. 51).

## II. LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine." *Bennett v. SEPTA*, No. 23-1271, 2024 WL 404959, at *6 (E.D. Pa.

---

[1] Though not relevant here, Plaintiff also brought claims under the Pennsylvania Human Relations Act ("PHRA"), for which the Court granted Defendants' motions to dismiss. *See id.*

Feb. 2, 2024), *aff'd sub nom.*, *Bennett v. Se. Pa. Transp. Auth.*, 24cv1376, 2025 WL 1248815 (3d Cir. Apr. 30, 2025). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if, "based on the evidence, 'a reasonable jury could return a verdict for the nonmoving party.'" *Bennett*, 2024 WL 404959, at *6 (quoting *Anderson*, 477 U.S. at 248).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). "When the movant is the defendant, they have the burden of demonstrating that the plaintiff 'has failed to establish one or more essential elements of her case.'" *Bennett*, 2024 WL 404959, at *6 (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013)). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If Plaintiff fails to raise a genuine dispute of material fact as to any element of his prima facie case, summary judgment in favor of Defendant is warranted." *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 433 (E.D. Pa. 2023) (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996)).

The Court does not weigh evidence or make credibility determinations at the summary judgment stage. Rather, it simply determines "whether there is a genuine issue for trial." *Bennett*, 2024 WL 404959, at *6 (citing *Anderson*, 477 U.S. at 249). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a triable issue; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Employment Relationship[2]

"A plaintiff alleging employment discrimination under Title VII must demonstrate that an employment relationship existed with the defendant." *Payne v. Prevention Point Phila., Inc.*, No. 21-2173, 2022 WL 796184, at *2 (3d Cir. Mar. 15, 2022) (citing *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 119 (3d Cir. 2013)).[3] In determining whether an employment relationship exists, courts in the Third Circuit use the factors identified in *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318 (1992). *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015). Those factors include:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Faush*, 808 F.3d at 214 (quoting *Darden*, 503 U.S. at 323-24). The Court places particular focus on "the level of control the defendant[s] . . . exerted over the plaintiff: which entity paid [the

---

[2] In her opposition, Plaintiff argued for the first time that, even if Defendants are not her employer, they can still be held liable as joint labor-management committees. Whatever merit this argument may have, "a plaintiff cannot introduce new legal theories or claims through an opposition to a motion for summary judgment." *Price v. City of Philadelphia*, 239 F. Supp. 3d 876, 900 n.17 (E.D. Pa. 2017). Accordingly, Plaintiff's claims may not proceed on this new theory of liability.

[3] For an ADA employment discrimination claim, "a plaintiff must allege an employment relationship with the defendant," as well. *Shank v. Jushi Holdings Inc.*, No 26-5234, 2026 WL 3084999, at *4 (E.D. Pa. Oct. 15, 2026) (citing *Clackamas Gastroenterology Assocs., PC v. Wells*, 538 U.S. 440, 448-50 (2003)). The ADA "defines 'employer' in materially the same way as Title VII." *Mount Lemmon Fire Dist. v. Guido*, 586 U.S. 1, 4 n.1 (2018).

employees'] salaries, hired and fired them, and had control over their daily employment activities." *Covington*, 710 F.3d at 119 (internal quotation omitted). "[A] plaintiff's status as an employee under Title VII [or the ADA] can be determined only upon careful analysis of the myriad facts surrounding the employment relationship in question." *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997) (quoting *Miller v. Advanced Stud.*, 635 F. Supp. 1196 (N.D. Ill. 1986) (emphasis removed)) (Title VII); *Shank v. Jushi Holdings Inc.*, No 26-5234, 2026 WL 3084999, at *4 (E.D. Pa. Oct. 15, 2026) (ADA).

**1. Local 19**

Local 19 denies that it employed Plaintiff. It argues that it did not pay, hire, fire, supervise, or discipline her and so lacked a sufficient level of control. ECF No. 49-2 at 9-10. Plaintiff claims that such control existed because Dorward assigned Plaintiff to the contractors; on at least one occasion, Dorward modified her job duties; and on several occasions, Plaintiff was paid by Local 19 through its Supplemental Unemployment Benefit Fund ("SUB Fund"). ECF No. 51 at 5.

Local 19 did not employ Plaintiff. First, it did not pay her wages. The third-party contractors paid her, including for the time she spent training in JATC's classroom. *See* ECF No. 49-8; ECF No. 49-4 at 68:24-69:17. The only payments from Local 19 to Plaintiff were through its SUB Fund on a few occasions. *Id.* at 98:17-99:3, 284:25-285:9. As the name implies, the SUB Fund provides additional funding to supplement traditional unemployment benefits for Local 19 members who have been laid off or who are otherwise unemployed. *Id.*; ECF No. 49-6 at 85:15-23, 86:16-21. The fund is paid for by membership dues and contributions from third-party contractors. ECF No. 49-4 at 66:2-9, 260:3-19. "[P]ayment for work [is] generally understood as one of the principal indicia of an employer-employee relationship." *Covington*,

710 F.3d at 119. However, Plaintiff received her SUB Fund payments only when she was unemployed. Local 19 never paid Plaintiff for her work.

Second, Local 19 did not control Plaintiff's daily employment activities. The Collective Bargaining Agreement governs the apprenticeship program and establishes JATC. *See* ECF No. 49-14 art. XIII. Apprentices are "under the supervision and control of" JATC. *Id.* art. XIII § 1. "Apprentices [are] rotated from Employer to Employer at the sole discretion of the [JATC]." *Id.* art. XIII § 6. "[F]ailure to comply with proper application of the Apprentice Standards, if such is so decided by the [JATC], shall be sufficient cause for removal of any or all Apprentices in [a contractor's] employ." *Id.* JATC can create rules and regulations "to govern eligibility, registration, education, transfer, wages, hours, [and] working condition of duly qualified Apprentices." *Id.* art. XIII § 1. The Agreement also expressly contemplates that the JATC would have the power to "discipline, discharge, or reassign[]" all apprentices in the program. *Id.* art. XIII § 10. JATC monitors apprentices at their work site through the apprentice's work reports and contractor's evaluations. ECF No. 49-5 at 25:7-22. While at work site, Plaintiff remained bound by JATC's apprenticeship standards. ECF No. 49-4 at 118:11-19; ECF No. 51-2 ¶¶ 20-21.

True, Plaintiff notes that, on one occasion, Dorward "instructed a third-party contractor to change [her] job duties as they were not in line with her role as an apprentice." ECF No. 51-2 ¶ 35. However, a union representative stepping in on behalf of a member when an employer makes her perform functions beyond her job description is hardly surprising. Moreover, Plaintiff does not show that Dorward was acting as an agent of Local 19 at that time. Dorward is a member of the JATC Board. ECF No. 49-5 at 14:14-18. And, as discussed, JATC was responsible for ensuring that both apprentices and employers complied with JATC's apprenticeship standards.

Finally, Local 19 did not have the power to hire or fire Plaintiff. Edmonds brought Plaintiff into the apprenticeship program, and JATC ultimately discharged her. *See* ECF No. 49-4 at 41:23-42:11; ECF No. 49-9; ECF No. 49-16; ECF No. 49-18. Accordingly, Local 19 lacked the requisite control over Plaintiff to create an employment relationship. The Court will therefore grant Local 19's motion for summary judgement.[4]

**2. JATC**

As discussed, JATC retains significant control over the apprentices within its program. True, the third-party contractors paid Plaintiff and did have some control in removing her from their work sites. *See* ECF No. 49-8; ECF No. 49-4 at 129:2-130:5. However, that "does not preclude the possibility that [JATC] may share co-employer or joint employer status with" the contractors. *Graves*, 117 F.3d at 727 (noting that state courts are employers of judicial personnel even though they are paid by county governments and were potentially subject to county workplace regulations). To determine whether a joint employment relationship exists, courts consider "(1) the entity's authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (2) its day-to-day supervision of employees, including employee discipline; and (3) its control of employee records, including payroll, insurance, taxes and the like." *Plaso v. IJKG, LLC*, 553 F. App'x 199, 204-05 (3d Cir. 2014) (internal quotation omitted). Here, JATC has the power to issue rules regarding wages, hours, and education; discipline and discharge apprentices; and otherwise supervise and control their work with third-party contractors. *See* ECF No. 49-14 art.

---

4 Furthermore, because Plaintiff cannot show that Local 19 "exercise[d] significant control" over her employment, Plaintiff's joint employment theory also fails. *See Graves*, 117 F.3d at 727.

XIII §§ 1, 6, 10. Therefore, notwithstanding the contractors' concurrent control over Plaintiff's wages and work, there is sufficient evidence to create a genuine issue of fact as to whether JATC was Plaintiff's employer or joint employer.

### B. ADA Claims[5]

Plaintiff argues that "[t]his is a direct evidence case." ECF No. 50 at 1 (emphasis removed). "Direct evidence of discrimination must be 'so revealing of [discriminatory] animus that it is unnecessary to rely on the [*McDonnell Douglas*] burden-shifting framework.'" *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010) (quoting *Walden v. Ga.-Pac. Corp.*, 126 F.3d 506, 512 (3d Cir. 1997)). "To qualify as direct evidence, the evidence must be such that it demonstrates that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Anderson*, 126 F.3d at 269 (internal quotations omitted). The evidence must be (1) "strong enough to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the defendant's decision" and (2) "connected to the decision being challenged by the plaintiff." *Id.* (citation modified). If "a plaintiff produces such evidence, the defendant has the burden of producing evidence to show that it would have made the same decision in the absence of discriminatory animus." *Id.* (citing *Walden*, 126 F.3d at 512-13).

---

[5] JATC moves for summary judgement on Plaintiff's retaliation and failure to accommodate claims under the ADA. *See* ECF No. 48-2 at 19-22. Plaintiff does not contest these issues in her response. *See generally* ECF No. 50. "Where a plaintiff fails to address a claim in their opposition to a summary judgment motion, it is proper for the Court to grant summary judgment on that issue." *Kluender v. U.S. Liab. Ins. Co.*, No. 22-3650, 2025 WL 886949, at *4 (E.D. Pa. Mar. 21, 2025) (collecting cases); *Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 432 (E.D. Pa. 2008). Accordingly, the Court will grant JATC's motion as to these claims.

During the special meeting, JATC trustee Lori Eshenaur purportedly told Plaintiff, "if you have mental problems, if you have a heart problem do we even really want you to be in our union?" and that she "seem[s] more like a liability than an asset." ECF No. 49-16 at 1; ECF No. 49-6 at 88:22-25; ECF No. 49-4 at 265:5-10. Eshenaur was one of the trustees who voted to terminate Plaintiff. ECF No. 49-6 at 89:8-10. A reasonable jury could therefore find that it is more likely than not that discrimination was a motivating factor in JATC's termination decision. *See Fakete v. Aetna, Inc.*, 308 F.3d 335, 339 (3d Cir. 2002) (finding direct evidence of age discrimination where the person who made the firing decision told the plaintiff employee that he was "looking for younger single people" and that plaintiff "wouldn't be happy [at Aetna] in the future").

"As [Plaintiff] has presented sufficient evidence with respect to [her] unlawful termination claim to survive summary judgment under a [direct evidence] theory, [the Court] need not consider whether that claim may proceed under a *McDonnell Douglas* theory." *Id.* at 340 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.")).

For the same reasons, Plaintiff's perceived disability discrimination claim also survives summary judgment. *See Porter v. Merakey USA*, No. 22-2986, 2024 WL 3581169, at *2 (3d Cir. July 30, 2024) ("Considering the entirety of Porter's testimony and recognizing that a reasonable jury could find Porter disabled, it is plausible that Merakey regarded Porter as disabled."). Based on Eshenaur's comments, a reasonable jury could find that JATC regarded Plaintiff as disabled—even if she was not—and terminated her on that basis. *Id.*

### C. Title VII Claims[6]

#### 1. Gender Discrimination

In the absence of direct evidence of discrimination, the Court evaluates Plaintiff's discrimination claims under *McDonnell-Douglas*. *Anderson*, 621 F.3d at 270. "*McDonnell Douglas* requires the plaintiff to shoulder the initial burden to make out a *prima facie* case of discrimination." *Wood v. Univ. of Pittsburgh*, 395 F. App'x 810, 814 (3d Cir. 2010). "If the plaintiff meets this requirement, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory rationale for the employment action." *Id.* "Should the defendant satisfy its burden, the presumption of discriminatory action is rebutted and the plaintiff must demonstrate that the defendant's stated reasons are pretextual." *Id.* (citing *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007)).

"The existence of a *prima facie* case of employment discrimination is a question of law that must be decided by the Court." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). To establish a *prima facie* case of gender discrimination under Title VII, a plaintiff must show: "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

"To raise an inference of discriminatory action, [Plaintiff] must plead facts showing 'some causal nexus between [her] membership in a protected class' and the adverse employment

---

[6] JATC moves for summary judgment on Plaintiff's retaliation claims under Title VII. Because Plaintiff did not address this claim in her Opposition, she has abandoned it. *Kluender v. U.S. Liab. Ins. Co.*, No. 22-3650, 2025 WL 886949, at *4 (E.D. Pa. Mar. 21, 2025) (collecting cases); *Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 432 (E.D. Pa. 2008). Accordingly, the Court will grant JATC summary judgment on this basis.

action." *Slater v. Yellen*, No 21-2763, 2022 WL 20742521, at *4 (E.D. Pa. Aug. 22, 2022), *aff'd* 2023 WL 6457818 (3d Cir. Oct. 4, 2023) (quoting *Sarullo*, 352 F.3d at 798). Here, Plaintiff has failed to show a causal nexus between the sexual harassment and JATC's decision to terminate her. Harassment by coworkers does not necessarily demonstrate an employer's discriminatory intent. *Majtan v. Weck*, No. 99-718, 2000 WL 1386321, at *5 (E.D. Pa. Sept. 22, 2000) (citing *Shaner v. Synthes*, 204 F.3d 494, 506 (3d Cir. 2000); *Smith v. Legett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000); *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 672-73 (8th Cir. 1994)).

Plaintiff acknowledges that Dorward was unaware of the sexual harassment. ECF No. 50 at 19. And, although Eshenaur purportedly dismissed her claims of sexual harassment during Plaintiff's termination hearing, Plaintiff does not point to any evidence that the sexual harassment had any bearing on her termination. Even if Eshenaur's statements may give rise to an inference of disability discrimination, it does not create an inference of gender discrimination.

Moreover, Plaintiff cannot establish that JATC's reasons for terminating her were pretextual. To establish pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

Here, JATC argues that "Plaintiff was expelled from the JATC apprenticeship program because of repeated attendance, punctuality, reliability, and performance issues, not because of her gender." ECF No. 48-2 at 10. Plaintiff claims that this reasoning is "untrue, contradictory and inconsistent." ECF No. 50 at 15, 20. She points to her lack of discipline as the sole reason

why JATC's explanation is pretextual, arguing "it is simply implausible that she was allowed to continue to work with no repercussions whatsoever." *Id.*

However, Plaintiff's own exhibits undermine her argument. Plaintiff received several evaluations by third-party contractors during her apprenticeship, and each one refers to the exact same issues that JATC notes. *See* ECF No. 50-5; ECF No. 50-6; ECF No. 50-11; ECF No. 50-12; *see also* ECF No. 49-19. Mr. Davies noted that Plaintiff had "many call offs and no call no show[s]." ECF No. 50-6. Mr. Rodriguez noted that Plaintiff "[r]egularly call[ed] off or le[ft] early" and "[a]lways [was] on her phone or wasting time talking about non-work related issues." ECF No. 50-11. Mr. Yandfrisevitz noted that Plaintiff's "calling off was starting to become a problem" and that she would leave in the middle of her shift "without asking." ECF No. 50-12. The exhibits also show that Plaintiff was informed about these issues prior to her termination. For instance, Mr. Yandfrisevitz noted that Plaintiff "was given multiple changes by supervisors to correct the issues at hand." *Id.*

Although no records exist to show that Plaintiff was formally disciplined for her attendance and performance issues, her evaluations show that these concerns were raised and communicated to her before her termination. The fact that she was told about these issues, rather than disciplined for them, is irrelevant. A reasonable factfinder therefore could not determine that JATC's "stated reason is unworthy of credence." *Brewer v. Quaker State Oil Refining Co.*, 72 F.3d 326, 332 (3d Cir. 1995). Accordingly, the Court will grant JATC summary judgment on Plaintiff's gender discrimination claim.

**2. Hostile Work Environment**

"Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "To succeed on a hostile work environment claim, the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." *Mandel*, 706 F.3d at 167 (citation omitted). "The first four elements establish a hostile work environment, and the fifth element determines employer liability." *Id.* (citing *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009)).

"Unlike most claims of employment discrimination, plaintiff's claim seeks to hold an employer liable for the harassment of its employee by a nonemployee." *Hewitt v. BS Transp. of Ill., LLC*, 355 F. Supp. 3d 227, 236 (E.D. Pa. 2019). "The Third Circuit has not addressed this question." *Id.* However, "the First, Second, Fourth, Eighth, Ninth, Tenth, and Eleventh Circuits instruct an employee can hold an employer liable for a non-employee's harassment when the employer 'knew or should have known' of the harassing conduct and failed to take immediate and appropriate action." *O'Neill v. Trs. of Univ. of Pa.*, No. 25-1129, 2025 WL 3047884, at *9 (E.D. Pa. Oct. 31, 2025); *Hewitt*, 355 F. Supp. 3d at 236 ("[O]ther circuit courts and other district courts in the Third Circuit"). "An employer knew or should have known about workplace sexual harassment if management-level employees had actual or constructive knowledge about the

existence of a sexually hostile environment." *Hewitt*, 355 F. Supp. 3d at 236 (quoting *Huston*, 568 F.3d at 105).

Plaintiff's sexual harassment claims relate to conduct by two H.T. Lyons employees, Mike Hudak and Dylan Malarchick. *See* ECF No. 50 at 18-19. With respect to Malarchick, Plaintiff testified that "he would text [her] every morning saying things about how he knows that [she] want[ed] him, he knows that [she] want[ed] to date him or have sex with him . . . everybody knew it, and [she] should just do it." *Id.* at 60:11-17. After five days of this, Plaintiff testified that she "deleted his messages and blocked his number." *Id.* at 61:1-5. She then reported the incident to Edmonds, stating that Malarchick "was spreading rumors to other apprentices and journeymen, that [she] was interested in him romantically." *Id.* at 61:14-16, 62:6-12. Because Edmonds is a supervisory employee, JATC knew or should have known about the environment created by these comments.[7]

With respect to Hudak, Plaintiff claims that he "made discriminatory comments to [her], including, 'women are too weak to do this job'; 'you should be a nurse instead.'" ECF No. 50-15 ¶ 4(5). Plaintiff also claims that Hudak "sexually assaulted [her] by pressing his pelvic area into her buttocks and wrapped his arms around her." *Id.* To be sure, Hudak's harassment was odious. However, it does not appear that Plaintiff reported this incident to Edmonds, Dorward, or anyone else at JATC. Although Plaintiff did inform Jeremy Hunsicker about the incident, ECF No. 49-4 at 220:9-12, nothing in the record reflects that Hunsicker was a management-level employee of JATC. As a result, JATC should not have known about Hudak's harassment and

---

7 JATC argues Edmonds and Dorward were never informed about these incidents based on their deposition testimony. ECF No. 48-2 at 15. However, this is a question of fact that cannot be determined on summary judgment. *See Hewitt*, 355 F. Supp. 3d at 236.

cannot be held liable for failing to remediate the issue. *See O'Neill*, 2025 WL 3047884, at *10-12.

Accordingly, because Plaintiff can establish *respondeat superior* liability for Malarchick's comments, the Court will deny JATC's motion on this claim. However, because JATC was not on notice of Hudak's conduct, Plaintiff may not proceed on that theory of liability. *Cf. Johnson-Harris v. AmQuip Cranes Rental, LLC*, No. 14-767, 2015 WL 4113542, at *8-10 (E.D. Pa. July 8, 2015) (noting that an employer cannot be held liable for discrimination that it was not aware of, even if it is aware of other incidents of discrimination against the same employee).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Local 19's motion for summary judgment. The Court will also grant JATC's motion with respect to Plaintiff's retaliation, failure to accommodate, and gender discrimination claims and deny the motion with respect to her disability discrimination and hostile work environment claims. An appropriate Order follows.

**BY THE COURT:**

MARY KAY COSTELLO
United States District Judge